Victoria Amusement Enterprises, Inc. v. Commissioner.
Victoria Amusement Enterprises v. Commissioner
Docket No. 108923.
United States Tax Court
1943 Tax Ct. Memo LEXIS 328; 1 T.C.M. (CCH) 1013; T.C.M. (RIA) 43205; May 3, 1943
*328 Petitioner held not entitled to use basis of former owner of property acquired by petitioner where facts do not show that requirements of section 113 (a) (7) of the Revenue Act of 1932 as regards interest or control have been fulfilled. Theodore B. Benson, Esq., 201 Normandy Bldg., Washington, D.C., for the petitioner. Paul E. Waring, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income and excess-profits taxes for the year 1936 in the respective amounts of $3,444.87 and $288.61, and for the year 1937 in the respective amounts of $4,120.75 and $863.66. The first issue is whether or not respondent erred in refusing to allow petitioner to use as a basis for depreciation of certain property acquired by it as hereinafter set out the basis which such property had in the hands of the Chamberlain Amusement Enterprises, Incorporated, hereinafter referred to as Chamberlain, which had owned that property at one time. In the event we decide that petitioner was entitled to use Chamberlain's basis we are then presented with the problem of determining the correct basis of such property in the hands of Chamberlain. Other assignments *329 of error alleged in the petition were waived by petitioner's counsel at the hearing. Findings of Fact Petitioner is a corporation which was organized under the laws of Delaware on October 7, 1932. Its principal place of business is in Shamokin, Pennsylvania. Chamberlain was incorporated and organized in 1914 and was engaged in the business of owning and operating moving picture theatres. In that year it had 1,076 shares of voting common stock outstanding. On January 1, 1930, Chamberlain had outstanding approximately 8,250 shares of 7 per cent cumulative non-voting preferred stock having a par value of $100 a share. It also was indebted on mortgage bonds in an amount in excess of $650,000. The mortgages which secured the bonds were held by The Pennsylvania Trust Company as trustee and covered all the properties owned by Chamberlain. On January 3, 1930, Lawrence J. Chamberlain, the president of Chamberlain, addressed a letter to the preferred stockholders of that corporation informing them that "it was deemed to be to the best interest of the Corporation and its stockholders to withhold the dividend ordinarily due January 1st until a later date." After issuance of this letter and *330 in February 1930 preferred stockholders of Chamberlain held a meeting at which it was agreed to employ John L. Pipa, Jr., an attorney, to look after their interests. Pipa obtained the consent of the preferred stockholders to have J. A. Welsh assist him. Subsequently, the preferred stockholders organized a protective association. This association held meetings at which it was agreed to institute an action for a receivership of Chamberlain. On March 29, 1930, as a result of such action, Stephen L. Gribbin was appointed temporary receiver of Chamberlain by the Court of Common Pleas of Northumberland County, Pennsylvania. On October 20, 1930, he was made permanent receiver by the same court and operated the theatre properties of Chamberlain until late in 1932. Throughout the receivership J. A. Welsh was counsel for the receiver. On March 28, 1930, The Pennsylvania Trust Company commenced foreclosure proceedings in the Court of Common Pleas of Northumberland County on a mortgage in the sum of $260,000 on all of the properties, consisting of the theatre properties hereinafter mentioned, owned by Chamberlain. On January 28, 1931, as a result of the foreclosure proceedings a consent judgment *331 was entered in favor of The Pennsylvania Trust Company in the sum of $287,170, with the understanding that there would be a stay of execution until January 27, 1932 to provide an opportunity to the preferred stockholders and bank creditors to reorganize Chamberlain. On June 29, 1932, as a result of the judgment, a sheriff's sale by the sheriff of Northumberland County was held at which the theatres in Shamokin, Mount Carmel and the Victoria Theatre in Lansford, Pennsylvania owned by Chamberlain were sold to John L. Pipa, Jr. for $176,000. The Shamokin theatre was bought subject to a mortgage of $214,000 and the Mount Carmel theatre was bought subject to a mortgage of $79,000. The Victoria Theatre in Lansford was bought free and clear of all liens. As a result of a sale under the same judgment, Henry H. Herman purchased the theatres in Mahanoy City and Tamaqua, Pennsylvania, owned by Chamberlain, for $5,000 also subject to the above-mentioned mortgage of $214,000. There was also a second mortgage on the Mahanoy City theatre of $110,000. All of the above-mentioned theatres were sold under the $287,170 judgment. The Strand Theatre in Lansford, Pennsylvania, owned by Chamberlain, was *332 sold to an attorney for The Pennsylvania Trust Company for $786.47 under a writ of execution issued in the sum of $60,000. Title to this latter property was later conveyed to Henry H. Herman. Subsequent to the sales above enumerated Pipa arranged to have The Pennsylvania Trust Company finance the theatre properties through a new corporation. On October 7, 1932, petitioner was organized with authorized no par common stock of 100 shares and 8,250 shares of non-voting preferred stock, the latter having a par value $100of a share. Petitioner, after its organization and in 1932, took title to all of the theatre properties above enumerated, assuming mortgages held by The Pennsylvania Trust Company in the sum of $725,000., the three theatre properties not purchased by Pipa at the above enumerated sales having been thereafter acquired by petitioner from the purchasers or through mean conveyances. Pipa, Welsh, and Gribbin had issued to themselves personally all of the outstanding common stock of petitioner which alone had voting rights and as a result managed and controlled petitioner until October 1937. As a result of a bill in equity filed on July 11, 1934 by certain preferred stockholders *333 in the Court of Common Pleas of Northumberland County, Pennsylvania against Pipa, Welsh, Gribbin, and petitioner, the Supreme Court of Pennsylvania, on appeal of that case, rendered a final opinion on October 8, 1937, holding: that all the common shares of petitioner issued to Pipa, Welsh, and Gribbin on or about October 7, 1932 when petitioner was organized were at all times held by them as trustees; and that all such shares, as well as petitioner's preferred shares belonged at all times to the preferred share holders of Chamberlain, according to their several interests in the latter, and should be turned over to them. Pursuant to a decree of the Court of Common Pleas of Northumberland County, Pennsylvania made in accordance with the opinion of the Supreme Court the preferred stockholders of petitioner held a meeting on November 9, 1937. At this meeting a resolution was adopted which recited, inter alia, that in order to comply with the decree of the Court of Common Pleas and to make equitable distribution of its common stock as therein prescribed it would be necessary to increase its authorized common capital stock from 100 to 8,250 shares. The resolution then provided that *334 its charter be amended to effectuate such result through proper action of its officers and directors. Another resolution adopted at the same meeting authorized the officers and directors to distribute the 8,250 shares of common stock, when issued, to the preferred stockholders of Chamberlain in pro rata proportion to their holdings, i.e., "share for share". As a result of these resolutions the common stock of petitioner was duly increased from 100 to 8,250 shares and was distributed, or being distributed at the time of the hearing, to the preferred stockholders of Chamberlain for the preferred stock owned by them in Chamberlain, share for share. All the common and preferred stock of petitioner belonged, at all times, to the preferred stockholders of Chamberlain. The common stockholders of Chamberlain never received any interest in petitioner by stock holding or otherwise. In constructing the theatre formerly owned by it in Mahanoy City, Chamberlain incurred architect fees amounting to $16,424.28. The total amount paid by Chamberlain to the general contractor who built this theatre was $235,684.22. This amount included charges for electrical work and equipment, but did not include *335 the cost of building the foundation which was constructed under a separate contract. Petitioner claimed and respondent allowed a cost basis on the theatre properties as follows: Cost
Cost
Claimed by
Allowed by
Theatre
Petitioner
Respondent
Shamokin: Building
$220,000.00
$ 64,651.07
Furniture & Fix-
tures
50,847.34
14,012.63
General Office
634.85
Mount Carmel: Building
340,000.00
174,302.03
Furniture & Fix-
tures
49,891.30
12,884.67
Mahanoy City: Building
275,000.00
187,972.72
Furniture & Fix-
tures
53,991.30
13,500.03
Tamaqua: Building
110,000.00
56,049.87
Furniture & Fix-
tures
15,150.37
7,357.14
In computing the depreciation here in question respondent determined the cost basis to petitioner of the theatres owned by petitioner during the taxable years to be $634,400. This amount was computed by taking $725,000, the sum of the mortgage liability assumed by petitioner with respect to the theatres and subtracting therefrom $90,600, the amount attributable as per that computation to two theatres at Lansford, Pennsylvania, indicated in that computation as having been sold in 1934. The $634,000 was allocated to each of the theatres by taking *336 that percentage of such sum which the appraisal value submitted by petitioner to respondent of each theatre bore to the total of such appraisal value of all of the theatres. Petitioner does not contest the allocated cost determined by respondent of the theatre building at Tamaqua, Pennsylvania. Opinion TYSON, Judge: The primary issue is whether or not petitioner in deducting depreciation for the taxable years 1936 and 1937 on assets acquired by it in 1932 and formerly owned by Chamberlain should use Chamberlain's cost basis or the cost of such assets to petitioner. Petitioner filed no brief, but alleges in its petition that it acquired the properties in question from Chamberlain in the fall of 1932 in connection with a reorganization as provided in section 113 (a) (7) of the Revenue Act of 1934 made applicable to the taxable years by section 113 (a) (16) of the Revenue Act of 1936 and, therefore, is entitled to use Chamberlain's basis in computing the deductions for depreciation. Respondent controverts this position of petitioner. The effect to be given the transaction here involved is governed by section 113 (a) (7) of the Revenue Act of 1932 [1] expressly made applicable to periods *337 subsequent to January 1, 1934 by section 113 (a) (12) of the Revenue Act of 1936. [2]
*338 Whether the transaction in question constituted a reorganization as defined in section 112 (i) of the Revenue Act of 1932 and thus, in this respect, was within the intendment of section 113 (a) (7) of that Act we need not and do not decide. However, even though it were assumed that there was such a reorganization petitioner, in our opinion, is nevertheless not entitled to use Chamberlain's basis in computing depreciation because the other requirement of section 113 (a) (7), supra, as to percentage of interest or control has not been fulfilled. It is clear that the bondholders had no such interest or control as is required by the statute either prior or subsequent to the transaction involved since prior to the sale of Chamberlain's properties under the mortgage securing Chamberlain's indebtedness to them they were merely creditors of Chamberlain and after the acquisition of the properties by petitioner and the consequent assumption by petitioner of the mortgage indebtedness they became merely creditors of petitioner. To determine whether or not this requirement of section 113 (a) (7), supra, has been fulfilled it is therefore necessary to decide whether a 50 per cent, or *339 more, interest or control in Chamberlain was continued in the same persons as stockholders in like percentage over into an interest or control of petitioner. See , reversed on another point, ; ; and . Immediately after the transfer Pipa, Welsh, and Gribbin obtained legal title to all of petitioner's common stock and controlled petitioner for several years, but under the decision of the Supreme Court of Pennsylvania they held such stock for the benefit of the preferred stockholders and those stockholders became at the time of the issuance of such stock to Pipa, Welsh, and Gribbin the equitable owners of all the common stock of petitioner. The record establishes that immediately before the sales of the properties under judicial proceedings and before their acquisition by the petitioner the interest and control of Chamberlain was in its common and preferred stockholders. The record *340 also establishes that, at that time there were approximately 8,250 shares of preferred stock of Chamberlain outstanding, but we are unable to determine from the record how much of Chamberlain's common stock was then outstanding. Since the record does not show how much of Chamberlain's common stock was outstanding immediately prior to the acquisition of the theatre properties by petitioner we are unable to determine whether the 50 per cent interest remained in the same persons, as required by the applicable statute. Respondent's determination is therefore sustained. In view of our holding sustaining respondents' determination that petitioner is not entitled to use Chamberlain's basis in computing depreciation we need not consider the second issue as to the correct basis of the depreciable property in the hands of Chamberlain; although, in passing, it may be observed that the only cost to Chamberlain of any of the theatre properties, shown by the record, is that the Mahanoy City theatre in part. Decision will be entered under Rule 50. Footnotes
1. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - (7) Transfers to Corporation Where Control of Property Remains in Same Persons. - If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer. ↩
2. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - (12) Basis Established by Revenue Act of 1932. - If the property was acquired, after February 28, 1913, in any taxable year beginning prior to January 1, 1934, and the basis thereof, for the purposes of the Revenue Act of 1932 was prescribed by section 113 (a) (6), (7), or (9) of such Act, then for the purposes of this Act the basis shall be the same as the basis therein prescribed in the Revenue Act of 1932.↩